IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES : | |
| : | CRIMINAL ACTION |
| v. : | |
| : | No. 07-663 |
| MARK MILLER : | |

**MEMORANDUM AND ORDER**

**Schiller, J.**                                                                                          **November 24, 2008**

      Defendant Mark Miller is charged in a three-count indictment with possession with the intent to distribute cocaine and cocaine base, arising out of two separate incidents. Currently before the Court is Miller's motion to suppress the 501.1 grams of cocaine found in his car and apartment on September 22 and 23, 2005, which forms the basis for Count One of the Indictment, and the cocaine and cocaine base recovered from a search of 1727 Harrison Street on June 27, 2007, which form the basis for Counts Two and Three. The Court held a hearing on November 14, 2008 on Miller's suppression motion as it pertains to Count One.[1] The Court, from the bench, denied Miller's motion to suppress the cocaine recovered on September 22 and 23, 2005. This memorandum is intended to explain the Court's ruling.

**I.    FINDINGS OF FACT**

      In mid-2005, Philadelphia police were investigating drug-trafficking activity in the Frankford area of the city. (Nov. 14, 2008 Tr. [hereinafter Tr.] at 13.) Approximately three weeks before the September 22, 2005 incident, Detective Louis Palmer, who was involved in these investigations,

---

[1] On September 24, 2008, after Miller filed his suppression motion, this Court severed the trial of Count One from that of Counts Two and Three. Thus, the Court need not address the legality of the June 27, 2007 search at this time.

learned from two confidential informants, whom he met with in-person, that Mark Miller was supplying cocaine in the Frankford area. (Tr. at 7, 15.) Detective Palmer had used one of these sources for over a year and the other for about a month and found them both to be reliable as their tips had resulted in large seizures of cocaine, crack-cocaine, and money. (Tr. at 8.) One of the sources provided general information about Miller's drug-related activities in the Frankford area, while the other stated that he had previously purchased cocaine directly from Miller. (Tr. at 15, 17-19.) Additionally, one of the informants identified Miller from a picture Detective Palmer found on the police department's photo-imaging system.[2] (Tr. at 16-17, 22-23.) Detective Palmer unsuccessfully attempted to set up a controlled purchase. (Tr. at 16.)

On September 22, 2005, Detective Palmer met in-person with a third confidential informant, whom he had not previously used. (Tr. at 8, 12.) The informant demonstrated specific knowledge of drug activity in Frankford. (Tr. at 13.) He told Detective Palmer that: (1) Miller was living at 8529 Rising Sun Avenue, at the Timber Cove Apartments, Apartment 186; (2) Miller often drove a gold Chevy Malibu or a Chevy Impala; (3) Miller dealt in "weight," meaning large quantities of cocaine; and (4) Miller would be delivering cocaine to the "far northeast part" of Philadelphia that day between 8:30 p.m. and 12:00 a.m. (Tr. at 8-9; Gov't's Ex. 1 [Search Warrant].) The informant also stated that he could purchase cocaine from Miller and that Miller was part of the "Vinny Cruz" organization. (Tr. at 14.)

Based on the informant's tip, police officers set up surveillance at the Timber Cove Apartments — they were on the lookout for a black male operating a car matching the informant's

---

[2] This photograph was not shown to the officers who were investigating Miller on September 22, 2005. (Tr. at 37-38.)

description. (Tr. at 27.) At some point after 10:00 p.m., Officer Bradford Mitchell, who was in an unmarked car across from Apartment 186, observed Miller driving a gold Chevy. (Tr. at 28-29, 37; Search Warrant.) Officer Mitchell was approximately forty or forty-five feet from the apartment; although it was late at night, the lighting was good. (Tr. at 28-29.) Miller pulled into the Timber Cove Apartments, parked near Apartment 186, and used a key to enter that apartment. (Tr. at 29.) A few minutes later, Officer Mitchell observed Miller exit Apartment 186 carrying a white object the size of a fist, which Miller was not carrying when he entered the apartment. (Tr. at 29-30.) Miller subsequently got into the gold Chevy and drove out of the apartment complex. (Tr. at 30-31.)

While maintaining contact with other officers involved in the investigation, Officer Mitchell followed Miller's car north on Rising Sun Avenue and up Verree Road. (Tr. at 10, 31.) As Miller was about to head east onto Rhawn Street, he was surrounded by several police cars, at least one of which was marked and had its lights flashing, and told that he was under arrest.[3] (Tr. at 11, 31-32, 44, 42, 53.) Eleven officers, some in uniform and some in plain clothes, were present for the stop and several of them exited their cars to approach Miller's car. (Tr. at 32, 36-37, 51, 53.) Officer Mitchell, who was then positioned along the passenger side of Miller's vehicle, observed Miller toss a newspaper onto the passenger seat. (Tr. at 32, 41.) Mitchell then observed a sandwich bag containing a chunky white substance protruding from the newspaper. (Tr. at 33.) Based on his experience, Officer Mitchell believed this substance to be cocaine. (Tr. 26-27, 32-33.)

Although Miller was boxed in by the police cars, he attempted to escape from the police in his vehicle. (Tr. at 43, 51.) Accordingly, Officer Sean Carey smashed his hand through Miller's

---

[3] The officers who testified at the suppression hearing could not recall whether any of the officers involved that evening had their guns drawn. (Tr. at 24, 42.)

driver's side window and another officer pulled Miller out of the vehicle through the window. (Tr. at 43, 52.) Additionally, the officers seized the substance on the passenger's seat. Officer Mitchell then told the other officers that this substance was the same substance he saw Miller carrying earlier. (Tr. at 34.) The substance in the bag field-tested positive for cocaine. (Search Warrant.)

The officers recovered a key to 8529 Rising Sun Avenue, Apartment 186, from Miller. While the police were waiting for a search warrant for Miller's apartment to issue, Mitchell and approximately five other officers entered Miller's apartment. (Tr. at 46.) The officers announced themselves and performed a five-minute walk through of the apartment to determine whether anyone else was there, so as to prevent the destruction of any evidence prior to obtaining the search warrant. (Tr. at 34, 47, 57.) They did not search the apartment for drugs at that time nor did they observe or seize any evidence of drug-related activity. (Tr. at 34, 47-48, 57.) After securing the apartment, the officers waited in the living room until the search warrant issued. (Tr. at 57.)

In the early morning hours of September 23, 2005, the officers obtained and executed a search warrant for the apartment based on the information obtained from the confidential informant, the officers' observations of Miller that evening, and the narcotics recovered from Miller's car. (Search Warrant.) Officer Mitchell confiscated a spoon and a pot from under the sink, both of which were covered in a dry, off-white substance he believed to be cocaine residue. (Tr. at 35-36.) Officer Jeffrey Walker, who also participated in the search of the apartment, recovered a plastic bag from a bedroom closet. (Tr. at 58.) Inside the plastic bag were three knotted sandwich bags, each holding numerous white chunks. (Tr. at 58-59.) The substances in the plastic bags were tested by the police laboratory and found to contain cocaine.

## II.     CONCLUSIONS OF LAW

The movant bears the burden of proving, by a preponderance of the evidence, that the evidence in question should be suppressed. *United States v. Johnson*, 63 F.3d 242, 245 (3d Cir. 1995); *United States v. Fleet Mgmt., Ltd.*, 521 F. Supp. 2d 436, 441 (E.D. Pa. 2007). If, however, the defendant establishes that the police conducted a warrantless search the burden shifts to the government to show that the search was reasonable. *Johnson*, 63 F.3d at 245.

### A.     The stop of Miller was an arrest

Miller contends that the cocaine found in his car should be suppressed because the police neither had probable cause nor reasonable suspicion to arrest him. The Government contends that the officers had reasonable suspicion to stop Miller and that they developed probable cause to arrest him upon seeing the cocaine in the car and when Miller attempted to flee. Accordingly, as a preliminary matter, the Court must determine whether Miller was under arrest at the time the officers stopped his car or was instead subject to an investigatory stop.

The Fourth Amendment protects individuals from "unreasonable searches and seizures." U.S. CONST. amend. IV. In general, "every arrest, and every seizure having the formal attributes of a formal arrest is unreasonable unless it is supported by probable cause." *Michigan v. Summers*, 452 U.S. 692, 700 (1981). Pursuant to *Terry v. Ohio*, 392 U.S. 1 (1968), and its progeny, however, "an officer may, consistent with the Fourth Amendment, conduct a brief, investigatory stop when the officer has a reasonable, articulable suspicion that criminal activity is afoot." *Illinois v. Wardlow*, 528 U.S. 119, 123 (2000). In determining whether an investigatory stop has risen to the level of an arrest, "the reasonableness of the intrusion is the touchstone, balancing the need of law enforcement officials against the burden on the affected citizens and considering the relation of the policeman's

actions to his reason for stopping the suspect." *Baker v. Monroe Twp.*, 50 F.3d 1186, 1192 (3d Cir. 1995). The factors considered in assessing whether a stop rises to the level of an arrest include: "the number of officers and police cars involved, the nature of the crime and whether there is reason to believe the suspect might be armed, the strength of the officers' articulable, objective suspicions, the erratic behavior of or suspicious movements by the persons under observation, and the lack of opportunity for them to have made the stop in less threatening circumstances." *United States v. Jones*, 759 F.2d 633, 639-40 (8th Cir. 1985) (footnote omitted). A court should consider these and any other relevant factors in light of the totality of the circumstances. *United States v. Edwards*, 53 F.3d 616, 620 (3d Cir. 1995).

Here, Miller was surrounded by several police cars containing approximately eleven officers, ordered to get out of the car, and informed that he was "under arrest." Blocking Miller's vehicle to prevent him from escaping, which Miller in fact tried to do, does not on its own constitute an arrest. *Edwards*, 53 F.3d at 619 (no arrest where two police cars boxed in defendant's car and officer approached with hand on revolver). But here, the officers yelled to Miller that he was "under arrest," a clear indication that the stop was a formal arrest. *Compare United States v. Blackmun*, 66 F.3d 1572, 1577 n.4 (11th Cir. 1995) (initial detention of defendant was *Terry* stop where "[n]o one contend[ed] that, before defendants came out [of the apartment], FBI agents ever told defendants that they were under arrest"); *United States v. Oates*, 560 F.2d 45, 57 (2d Cir. 1977) (stop not arrest because, among other things, officers "did not represent in any way that their detainees were being placed under arrest"). Accordingly, the totality of the circumstances — the officer's statement to Miller that he was under arrest, the large number of police on the scene, and the use of police cars to restrain Miller's ability to leave — indicate that when the police stopped Miller, they arrested him.

**B.      The officers had probable cause to arrest Miller**

To satisfy the Fourth Amendment, a warrantless arrest must be based on probable cause that a crime has been or is being committed. *Devenpeck v. Alford*, 543 U.S. 146, 152 (2004); *see also United States v. Stubbs*, 281 U.S. 109, 122 (3d Cir. 2002). "Whether probable cause exists depends upon the reasonable conclusion to be drawn from the facts known to the arresting officer at the time of the arrest." *Devenpeck*, 543 U.S. at 152; *see also United States v. McGlory*, 968 F.2d 309, 342 (3d Cir. 1992). Probable cause should be evaluated based on the "totality of the circumstances" with reference to "the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." *Illinois v. Gates*, 462 U.S. 213, 230-31 (1983). It "requires only a probability or substantial chance of criminal activity, not an actual showing of such activity." *Id.* 245 n.13. Furthermore, "where an automobile is involved, exigent circumstances exist that overcome the general warrant requirement due to the automobile's 'ready mobility.'" *Stubbs*, 281 F.3d at 122.

Here, the police had probable cause to arrest Miller.[4] Two known, reliable sources had informed them in face-to-face meetings that Miller was dealing cocaine. At least one of these informants had purchased cocaine from Miller in the past. Although the police had not previously used the confidential informant who supplied information on September 22, 2005, the informant supplied information that corroborated the tips from the other informants and police observations corroborated his information. After receiving this new informant's tip the police observed Defendant in the same car identified by the informant and coming and going from the apartment identified by

---

[4] Since reasonable suspicion is a less demanding standard than probable cause, *Wardlow*, 528 U.S. at 123, the officers also had reasonable suspicion to stop Miller's car that evening.

the informant. More importantly, the police observed Miller leaving his apartment with a white substance some time between 10:00 and 10:30 p.m., which corroborated the specific information they received from the informant as to the time Miller would be selling cocaine that evening. Although Officer Mitchell did not testify that he believed the white substance Miller was carrying out of the apartment to be cocaine, the white object certainly fit the description of cocaine. Combined with the informant's tip, this fact was sufficient to transform what might otherwise appear to be innocuous activity into likely criminal behavior. *See United States v. Benedict*, 389 F. Supp. 2d 136, 142 (D.N.H. 2005) ("'[C]orroboration of apparently innocent activity can establish the reliability of the informant because the activity might come to appear suspicious in light of the initial tip.'") (quoting *United States v. Greenberg*, 410 F.3d 63, 69 (1st Cir. 2005) (alterations in original)). Furthermore, the direction in which Miller was traveling was consistent with the informant's prediction that he would be supplying cocaine to the far northeast part of Philadelphia. In combination, these facts gave rise to the reasonable belief that Miller was en route to a drug-related transaction. Accordingly, the police had probable cause to arrest Miller when they stopped his car. *See United States v. Miller*, 925 F.2d 695 (4th Cir. 1991) (officer had probable cause to arrest defendant based on tip from previously unknown informant and his own observations, which corroborated the informant's predictions); *United States v. Rosario Vazques*, 2003-53, 2004 WL 50848 (D.V.I. Jan. 6, 2004) (informant's tip plus officers' corroboration established probable cause for arrest).

     Once Officer Mitchell saw a white substance, which he believed to be cocaine, protruding from the newspaper on the passenger's seat, the officers had probable cause to seize the cocaine and further evidence in support of probable cause to arrest Miller. The evidence of criminal activity —

the cocaine — was in plain view. *See United States v. Naylor*, Crim. A. No. 06-617, 2007 WL 1101282, at *3 (E.D. Pa. Apr. 12, 2007) (officers "observations of marijuana and drug paraphernalia in the Chevy Lumina, which [defendant] had just operated minutes earlier, gave [the officer] probable cause to believe [defendant] had just committed a felony"); *see also United States v. Hensley*, 469 U.S. 221, 235-36 (1985) ("Having stopped [defendant], the Covington police were entitled to seize evidence revealed in plain view in the course of the lawful stop, [and] to arrest [defendant's] passenger when evidence discovered in plain view gave probable cause to believe the passenger had committed a crime."). Additionally, Miller's attempted flight provided further reason to believe a crime was being committed. *See United States v. Cruz*, 910 F.2d 1072, 1077 (3d Cir. 1990) ("Flight at the approach of law enforcement officers, when coupled with specific knowledge relating the suspect to evidence of a crime, is a proper factor to be considered in the decision to make an arrest.").

### C. Search of Miller's apartment

Miller argues that the cocaine found in Apartment 186 should be suppressed because the police first searched the residence without a warrant; Miller does not, however, attack the validity of the search warrant itself. Subject to a few well-delineated exceptions that do not apply here, warrantless searches are per se unreasonable. *United States v. Ross*, 456 U.S. 798, 824-25 (1982). Nevertheless, even assuming that the initial entry into Miller's apartment was illegal, there is no basis for suppression of the cocaine found there because all of the evidence Miller seeks to suppress was found later that night, pursuant to a valid warrant.

In *Segura v. United States*, 468 U.S. 796 (1984), the Supreme Court addressed the pertinent legal issues brought up here. In that case, the New York Drug Enforcement Task Force received

the cocaine — was in plain view. *See United States v. Naylor*, Crim. A. No. 06-617, 2007 WL 1101282, at *3 (E.D. Pa. Apr. 12, 2007) (officers "observations of marijuana and drug paraphernalia in the Chevy Lumina, which [defendant] had just operated minutes earlier, gave [the officer] probable cause to believe [defendant] had just committed a felony"); *see also United States v. Hensley*, 469 U.S. 221, 235-36 (1985) ("Having stopped [defendant], the Covington police were entitled to seize evidence revealed in plain view in the course of the lawful stop, [and] to arrest [defendant's] passenger when evidence discovered in plain view gave probable cause to believe the passenger had committed a crime."). Additionally, Miller's attempted flight provided further reason to believe a crime was being committed. *See United States v. Cruz*, 910 F.2d 1072, 1077 (3d Cir. 1990) ("Flight at the approach of law enforcement officers, when coupled with specific knowledge relating the suspect to evidence of a crime, is a proper factor to be considered in the decision to make an arrest.").

### C. Search of Miller's apartment

Miller argues that the cocaine found in Apartment 186 should be suppressed because the police first searched the residence without a warrant; Miller does not, however, attack the validity of the search warrant itself. Subject to a few well-delineated exceptions that do not apply here, warrantless searches are per se unreasonable. *United States v. Ross*, 456 U.S. 798, 824-25 (1982). Nevertheless, even assuming that the initial entry into Miller's apartment was illegal, there is no basis for suppression of the cocaine found there because all of the evidence Miller seeks to suppress was found later that night, pursuant to a valid warrant.

In *Segura v. United States*, 468 U.S. 796 (1984), the Supreme Court addressed the pertinent legal issues brought up here. In that case, the New York Drug Enforcement Task Force received

information that the defendants, Andres Segura and Luz Marina Colon, were "probably" dealing cocaine out of their apartment. Accordingly, Task Force agents set up surveillance on the defendants. On two occasions, the agents observed Segura meeting with an individual named Enrique Rivudalla-Vidal. During one meeting, police observed Colon deliver a bulky package to Ester Parra, who had arrived with Rivudalla-Vidal but remained in the car. After the two left, police followed and stopped Rivudalla-Vidal and Parra and arrested them after Parra was found with cocaine. Rivudalla-Vidal opted to cooperate with police — he told them that he purchased the cocaine from Segura, confirmed that Colon delivered the cocaine, and informed police that Segura was supposed to call him later that day to see if Rivudalla-Vidal was able to sell the cocaine. Accordingly, the agents acquired an arrest warrant for Segura and Colon and applied for a warrant to search Segura's apartment.

Shortly after they applied for the search warrant, the agents proceeded to Segura and Colon's apartment to secure the premises and prevent the destruction of evidence. Segura was arrested when he entered the lobby of the apartment building. The agents took Segura to his apartment, knocked on the door, and entered the apartment after Colon appeared at the door. The agents did not request or receive permission to enter. The agents informed Colon and the other three individuals in the apartment that Segura had been arrested and that they were in the process of procuring a search warrant.

Next, the agents conducted "a limited security check of the apartment to ensure that no one else was there who might pose a threat to their safety or destroy evidence." *Id.* at 800-01. While performing this security check, the agents came across drug paraphernalia in plain view, but did not disturb the evidence at that time. Nineteen hours later, a search warrant issued and was executed at

defendants' apartment — the agents recovered pounds of cocaine, ammunition, large amounts of cash, and records of narcotics transactions. At that time, the agents also seized the paraphernalia previously observed.

The Court held that "securing a dwelling, on the basis of probable cause, to prevent the destruction or removal of evidence while a search warrant is being sought is not itself an unreasonable seizure of either the dwelling or its contents." *Id.* at 798. Additionally, the Court held that the evidence discovered during the subsequent search of the apartment need not be suppressed "because the warrant and the information on which it was based were unrelated to the entry and therefore constituted an independent source for the evidence." *Id.* at 799.

Here, the police did not search Miller's residence prior to receiving the search warrant. Instead, they secured the apartment — an area in which they had probable cause to believe Miller kept fruits of his drug-related activities — to prevent the destruction of evidence while they waited for a warrant to issue. The cocaine and other items found by the police that night were neither discovered nor seized when the police secured the apartment. Nor did the police recover any information during the initial entry that they used to procure the search warrant. Accordingly, there is no evidence to suppress that resulted from the officer's illegal entry. Instead, all of the evidence Miller seeks to suppress was recovered in a lawful search of the premises pursuant to the valid search warrant obtained by police later that evening. Thus, that evidence was independently and legally obtained when the police effectuated the search warrant and should not be suppressed. *See United States v. Herrold*, 962 F.2d 1131, 1140 (3d Cir. 1992) ("[U]nder the independent source doctrine, evidence that was *in fact* discovered lawfully, and not as a direct or indirect result of illegal activity, is admissible.").

**III.     CONCLUSION**

For the above reasons, Miller's motion to suppress the cocaine recovered from his car and his apartment is denied. An appropriate Order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES : | |
| : | CRIMINAL ACTION |
| v. : | |
| : | No. 07-663 |
| MARK MILLER : | |

**ORDER**

AND NOW, this **24th** day of **November, 2008**, after consideration of Defendant's Motion to Suppress (Document No. 32) and the Government's response thereto, and after a suppression hearing on November 14, 2008, it is hereby **ORDERED** that Defendant's motion is **DENIED** as follows:

1. Defendant's motion to suppress the cocaine seized on September 22 and 23, 2005 is **DENIED**.

2. Defendant's motion to suppress the cocaine and cocaine base seized on June 27, 2007 is **DENIED without prejudice**.

BY THE COURT:

_____
**Berle M. Schiller, J.**