**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITED STATES** | : | |
| | : | **CRIMINAL ACTION** |
| v. | : | |
| | : | **No. 07-663** |
| **MARK MILLER** | : | |

<u>**MEMORANDUM AND ORDER**</u>

**Schiller, J.**                                                                                                      **February 24, 2009**

Defendant Mark Miller is charged in a three-count indictment, arising out of two separate incidents, with possession with the intent to distribute cocaine and cocaine base.  Currently before the Court is Miller's motion to suppress the 126 grams of cocaine and 81.17 grams of cocaine base recovered from a search of 1727 Harrison Street in Philadelphia on June 28, 2007, which form the bases for Counts Two and Three of the Indictment.[1]  For the following reasons, Miller's motion is denied.

I.       **BACKGROUND**

On June 28, 2007, police procured a search warrant for 1727 Harrison Street in connection with an investigation into a shooting that took place on June 17, 2007.  (Def.'s Mot. to Suppress Ex. A [Search Warrant].)  The supporting affidavit, sworn to by Detective Harrigan, establishes the following facts.  The victim was sitting inside his car with his girlfriend when he was approached by eight to twelve men.  One of the men pointed a handgun through the front passenger window and shot the victim in the hip as he tried to get out of the car.  The victim was treated for his wounds and

---

[1] The Court previously denied Miller's motion to suppress the cocaine found in his car and apartment, which forms the basis for Count One.  Miller subsequently pled guilty to that count.

police recovered two .38 shell casings from the scene.

Police interviewed and re-interviewed the victim and his girlfriend.  The girlfriend identified the shooter as a man she knew as "Diamond."  She stated that Diamond and another man walked up to the car and that Diamond subsequently fired two or three shots at her boyfriend.  The victim corroborated his girlfriend's rendition of the events and added that the two men fled into the Whitehall Housing Development after the shots were fired.  In her second interview, the girlfriend stated that she knew both men from the Whitehall Housing Development.  She again identified Diamond Brown as the shooter and identified Kenny Jenkins as the man who fled with Diamond Brown.  Accordingly, police prepared photo arrays from which the victim identified Diamond Brown as the shooter and Kenny Jenkins as his accomplice.

Police arrested Diamond Brown on June 27, 2007, pursuant to an arrest warrant.  After being advised of his rights, Brown admitted to the shooting.   He told police that he was given the gun by a man he knows as "Bucket" and that after the shooting Brown immediately met up with Bucket in the rear of the Whitehall Housing Development.  At that point, Bucket took back the gun and fled the scene.  Since the investigating detectives knew "Bucket" to be a street name for James Magnum, they showed Brown a photograph of Magnum.  Brown identified Magnum as the individual who had given him the gun.  Based on this information, Detective Harrigan believed that weapons, ballistics, ammunition and other "fruits of the crime," would be found at 1727 Harrison Street, Magnum's registered address according to a check of Magnum's criminal history and Bureau of Motor Vehicles records.

A search warrant for 1727 Harrison Street was issued the following day based on Harrigan's affidavit.  The warrant identified the following items to be searched for and seized: (1) "any and all

2

evidence of an Aggravated Assault/Shooting"; (2) "Any and all guns, ammunition, ballistics"; (3) "Proof of Residency"; (4) "All paperwork in name of James Magnum"; and (5) "Any and all proof of narcotic activity, contraband, narcotic paraphrenalia [sic]."  (Search Warrant.)  Detectives Harrigan, Christopher Casee, and another officer executed the warrant that day.  The officers found a large safe in the basement and carried it up the stairs and outside the house so that they could search it without damaging the property.  During the suppression hearing, Detective Harrigan testified that the safe was approximately two or three feet square.  The search of the safe uncovered plastic bags containing cocaine and cocaine base and a scale with residue on it.  Police also recovered a scale from a second floor bedroom closet and documents in Miller's name and in the names of James Magnum, Melvia Miller and Vernon Riggins.

## II.     STANDARD OF REVIEW

On a motion to suppress, the movant bears the burden of establishing a violation of his constitutional rights by a preponderance of the evidence.  *See United States v. Johnson*, 63 F.3d 242, 245 (3d Cir. 1995); *United States v. Acosta*, 965 F.2d 1248, 1257 n.9 (3d Cir. 1992).  Where a search is conducted pursuant to a warrant, a reviewing court must uphold that warrant provided that there is a "substantial basis" for the magistrate's finding of probable cause.  *United States v. Hodge*, 246 F.3d 301, 305 (3d Cir. 2001); *United States v. Conley*, 4 F.3d 1200, 1205 (3d Cir. 1993).  "In making this determination, the Court confines itself 'to the facts that were before the magistrate judge, i.e., the affidavit, and [does] not consider information from other portions of the record.'"  *Hodge*, 246 F.3d at 305 (quoting *United States v. Jones*, 994 F.2d 1051, 1055 (3d Cir. 1993)) (alterations in original).  The affidavit must be read in a "common sense and nontechnical manner," *Conley*, 4

F.3d 1206 (quoting *Illinois v. Gates*, 462 U.S. 213, 230-31 (1983)), and "great deference" should be afforded to the magistrate's decision. *Hodge*, 246 F.3d at 305; *see also United States v. Ventresca*, 380 U.S. 102, 109 (1965) ("[T]he resolution of doubtful or marginal cases in this area should be largely determined by the preference accorded to warrants.").

## III.    DISCUSSION

### A.    A substantial basis existed for the magistrate's finding of probable cause

Miller attacks the warrant for lack of the requisite probable cause.  He asserts that the information supplied by Diamond Brown could not establish probable cause because Brown "had been arrested and had a motive to falsely implicate Magnum and others to deflect attention from himself" and because Brown "provided no information that the fruits of an attempted murder would be found inside 1727 Harrison Street."  (Def.'s Mem. of Law in Supp. of Def.'s Mot. to Suppress [hereinafter "Def.'s Mem."] at 2.)  Miller acknowledges that the police were able to associate Magnum with that address but argues that "there is no indication as to when [Magnum lived there] or if he still lived at that address at the time of the attempted murder." (*Id.*)  The Government counters that the warrant is sufficiently supported by probable cause and, irrespectively, the police relied upon the warrant in good faith.

Probable cause exists where "the known facts and circumstances are sufficient to warrant a man of reasonable prudence in the belief that contraband or evidence of a crime will be found." *Ornelas v. United States*, 517 U.S. 690, 696 (1996) (citations omitted).  Probable cause should be evaluated based on the "totality of the circumstances" with reference to "the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act."

4

*Gates*, 462 U.S. at 230-31.  "[D]irect evidence linking the place to be searched to the crime [being investigated] is not required for the issuance of a search warrant."  *Conley*, 4 F.3d at 1207.  A magistrate judge may infer the existence of probable cause to search a location by the type of crime, the nature of the items sought, and inferences as to where that evidence might be concealed.  *Jones*, 994 F.2d at 1056.

There is a substantial basis for the magistrate's determination that probable cause existed to search 1727 Harrison Street for evidence related to the shooting.  The affidavit described the victim and his girlfriend's identification of Brown as the shooter and Brown's arrest.  Brown himself admitted to the shooting and told police that he met up with "Bucket" in the rear of the Whitehall Housing Development immediately after the shooting to return the gun to Bucket.  The officers knew that Bucket was Magnum's street name and Brown identified Magnum from a photograph as the individual who gave him the gun.  From this, the officers could reasonably conclude that after retrieving the gun from Brown, Magnum might hide it in his home.  They then confirmed Magnum's home address using two sources — Magnum's criminal history and Bureau of Motor Vehicles records.

Miller's argument that the warrant is invalid because Brown's information is unreliable fails.  As the perpetrator, Brown had direct knowledge of the shooting and of Magnum's involvement.  At the time he provided information to the police implicating Magnum, Brown had already confessed to the shooting.  Thus, the information he provided about the crime was presumptively reliable absent a reason to believe otherwise.  *See United States v. Patterson*, 150 F.3d 382, 386 (4th Cir. 1998) ("[T]here was probable cause to seize [defendant's] Honda based on Greene's statement that [defendant] participated in the robbery with him and that the two of them used [defendant's] vehicle

as transportation during the robbery."); *Craig v. Singletary*, 127 F.3d 1030, 1045 (11th Cir. 1997) (en banc) (co-participant's confession implicating defendant provided probable cause for arrest: "It would be anomalous for us to hold that even though a codefendant's uncorroborated testimony can prove guilt beyond a reasonable doubt, the confession of a co-defendant that he and the suspect committed the crime is insufficient to establish probable cause."); *United States v. Gaviria*, 805 F.2d 1108, 1115 (2d Cir. 1986) ("[A] criminal participant or witness to a crime need *not* be shown to have been previously reliable before the authorities may rely on his statements.") (internal quotations omitted). Furthermore, Brown's story was, in fact, corroborated in part by the victim's statement that Brown was the shooter and that Brown fled toward the Whitehall Housing Development after the shooting. Accordingly, the police could conclude that Magnum was involved in the shooting and that he retrieved the gun from Brown that night.

From there, it was reasonable for the police to infer that Magnum might have stashed the gun and any other related evidence at his residence. *See Jones*, 994 F.2d at 1056 ("[F]irearms, are also the type[] of evidence likely to be kept in a suspect's residence."); *see also United States v. Hopkins*, 220 F. App'x 155, 157 (3d Cir. 2007) (affidavit provided substantial basis for probable cause where "the evidence sought, a weapon used in an assault, is of the type typically stored in a perpetrator's residence"). Brown did not need to provide information directly linking the gun to 1727 Harrison Street. Nor is Miller's argument that the police had no basis for believing that Magnum lived at 1727 Harrison Street persuasive. The police took reasonable steps to determine Magnum's address by checking two sources — his criminal history and the Bureau of Motor Vehicles records. These sources established a fair probability that Magnum lived at the listed address and, since the shooting happened less than two weeks earlier, common sense dictates that Magnum most likely lived there

6

at the time of the shooting.  Accordingly, there was a substantial basis for the magistrate's probable cause determination.

Even if probable cause was lacking, the good faith exception would apply because it was objectively reasonable for police to rely on the warrant insofar as it permitted the search and seizure of guns, ammunition, ballistics and other evidence of an aggravated assault or shooting.  *See United States v. Loy*, 191 F.3d 360, 367 (3d Cir. 1999) (good faith exception precludes suppression of evidence obtained pursuant to an invalid warrant where law enforcement officers executed the search in reasonable reliance on the warrant's authority).  Indeed, "[t]he mere existence of a warrant typically suffices to prove that an officer conducted a search in good faith and justifies application of the good faith exception."  *Hodge*, 246 F.3d at 308.  To the extent Miller argues that the good faith exception does not apply here, he argues only that the warrant was fatally defective because it lacked the requisite probable cause.  *See id.*, 246 F.3d at 308 (listing circumstances in which good faith exception does not apply).  For the reasons discussed above, the warrant was not lacking the necessary indicia of probable cause.

B.      **Although the warrant was overbroad, the police were entitled to seize contraband in plain view**

In order to satisfy the Fourth Amendment, a warrant must specify the particular items to be seized.  *Conley*, 4 F.3d at 1208.  A warrant is overly broad if it describes the items to be seized in both specific and inclusive generic terms, but also "authorizes the seizure of items as to which there is no probable cause."  *United States v. Ninety-Two Thousand Four Hundred Twenty-Two Dollars and Fifty-Seven Cents*, 307 F.3d 137, 149 (3d Cir. 2002) (citing *United States v. Christine*, 687 F.2d 749, 753-54 (3d Cir. 1982)).  However, a court may salvage the valid portions of an overly broad

warrant by striking those aspects of the warrant that are unsupported by probable cause while preserving those aspects of the warrant that satisfy the Fourth Amendment. *Id.*

The Government and Miller agree that the warrant in this case was overbroad in that it authorized the search and seizure of narcotics-related evidence without probable cause. (Def.'s Mem. at 2; Gov't's Mem. of Law in Supp. of Gov't's Opp'n at 8.)   However, they differ as to whether the good faith exception applies to salvage this portion of the warrant — Miller asserts that the warrant was so lacking in probable cause to search for drugs that the police could not have reasonably relied on it whereas the Government argues that the police were justified in their reliance. The Government also asserts that the evidence of drug-related activity should not be suppressed because it was found in plain view during the course of an otherwise lawful search.

Although the portion of the warrant authorizing the seizure of narcotics-related items must be stricken as overbroad for lack of probable cause, the warrant validly authorized the police to search for guns, ammunition and other evidence of an attempted murder.  Since the police searched the premises pursuant to a valid warrant, they were entitled to seize contraband in plain view provided that the evidence was found in a location where one might find guns, ammunition, ballistics, proof of residency or paperwork in the name of James Magnum.[2]

Detective Harrigan testified that the safe found in the basement was two or three feet square and that it took at least two officers to carry it up the stairs.  Clearly then, the safe was large enough to contain guns, ammunition, or other evidence of a shooting.  Accordingly, the officers were entitled to search the safe and, since the criminal character of the drugs found inside the safe was apparent, to seize the drugs even though the warrant did not properly authorize such a seizure. *See United*

---

[2] Miller's counsel conceded this point at the hearing on this motion.

*States v. Ganble*, 388 F.3d 74, 76-77 (2d Cir. 2004) (ammunition clip in defendant's dresser drawer was properly seized where police "had a Fourth Amendment justification for searching the contents of [defendant's] dresser drawer because they had a warrant authorizing them to search for and seize cocaine and drug paraphernalia — items that could plausibly be found in a dresser drawer."); *United States v. Lum*, 557 F. Supp. 2d 461, 468 (D. Del. 2008) ("[I]f law enforcement officers are engaged in an otherwise lawful search and inadvertently discover in plain view contraband or other items, the incriminating character of which is immediately apparent, those items may be seized even if those items fall beyond the original scope of the warrant.") (citing *Horton v. California*, 496 U.S. 128, 135 (1990)).   Since the drugs were properly seized as contraband in plain view, they are not subject to suppression.[3]

Miller also argues that the police improperly seized documents pertaining to individuals other than Magnum.  Because the police uncovered evidence of a narcotics-related crime while executing a  valid warrant, they were entitled to seize such documents as evidence linking those individuals to the cocaine, cocaine base and scales found in the course of the search.

**IV.    CONCLUSION**

For the above reasons, Miller's motion to suppress is denied.  An appropriate Order follows.

---

[3] Accordingly, the Court need not address the good faith exception.

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES | : | |
| | : | **CRIMINAL ACTION** |
| v. | : | |
| | : | No. 07-663 |
| MARK MILLER | : | |

## ORDER

**AND NOW**, this **24th** day of **February, 2009**, upon consideration of Defendant's Second Motion to Suppress Evidence (Document No. 51) and the Government's response thereto, after a hearing held on February 23, 2009 and for the foregoing reasons, it is hereby **ORDERED** that Defendant's motion is **DENIED**.

BY THE COURT:

_____
**Berle M. Schiller, J.**